UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PENNIE L. KEYES-ZACHARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CV-0638-CVE-FHM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is the report and recommendation (Dkt. # 21) of Magistrate Judge Frank H. McCarthy recommending that the Court affirm the decision of the Commissioner of the Social Security Administration to deny plaintiff's claim for disability benefits. Plaintiff has filed an objection (Dkt. # 22) to the report and recommendation, and she seeks remand for further review. Defendant has not filed a response to plaintiff's objection, and the time to do so has expired.

### I.

On July 15, 2010, plaintiff applied for benefits, alleging that she had been disabled as of June 4, 2009.[1] Dkt. # 13-5, at 2. Plaintiff's application stated that both physical and psychological conditions, including difficulty hearing, asthma, arthritis, stress, and a back injury, left her unable to work. See Dkt. # 13-6, at 6. Plaintiff's claim was denied initially on March 18, 2011, and after reconsideration it was denied again on July 14, 2011. Dkt. # 13-3, at 2-3. Plaintiff requested a

---

[1] Plaintiff previously filed two other applications for benefits, once on June 7, 2004, and once on August 1, 2008. Dkt. # 13-2, at 34. Each of those applications was denied. Id.; see also Keyes-Zachary v. Astrue, 695 F.3d 1156 (10th Cir. 2012).

hearing before an administrative law judge (ALJ), and that hearing was held on May 30, 2012. Dkt. # 13-2, at 32.

Plaintiff appeared at the hearing and was represented by an attorney. Id. at 34. Plaintiff was fifty-one years old at the time of the hearing, and she lived with her ex-husband and her father. Id. at 39, 40. She testified to a variety of physical and psychological complaints, including hearing difficulties, headaches, heart spasms, anxiety, asthma, lightheadedness, depression, and injuries to her spine, knees, hands, neck, wrist, and elbow. Id. at 51-62. For these conditions, plaintiff took a number of medications, both prescription and over-the-counter. Id. at 47-49. Plaintiff left school after the 10th grade, and she did not earn a GED, although she attended some classes with the intent to earn one. Id. at 67-68.

The ALJ called vocational expert (VE) Dr. Angharad Young, Ed.D. in Counseling, to testify about plaintiff's previous work history and her ability to work. Id. at 68; see also Dkt. # 13-4, at 41. The VE testified that plaintiff had been a school cook, a cook's helper, a pillow stuffer, a server, and a cashier. Dkt. # 13-2, at 69. Plaintiff held these positions from 1997 through 2002, and in 2000 she was both a pillow stuffer and a cook's helper. Dkt. # 13-6, at 27. The ALJ posed a hypothetical question to the VE, asking if a hypothetical person with specific restrictions would be able to perform either plaintiff's past work or other work available in the economy. Dkt. # 13-2, at 70. Among other restrictions, the hypothetical person needed to "avoid loud background noises and should not work in environments or [sic] require good bi-aural hearing." Id. at 70-71. The ALJ also asked the VE to identify any conflicts between her testimony and the information in the Dictionary of Occupational Titles (4th ed. rev. 1991) [DOT], and the VE did not identify any such conflict. Id. at 70.

The VE stated that the hypothetical person could work as a pillow stuffer as that job is generally performed, although not as plaintiff performed it. Id. at 71. According to the VE, the exertion level of the position is listed in the DOT as light, although plaintiff reported a medium exertion level.[2] Id. She also testified that the hypothetical person could perform other occupations as described in the DOT; her "representative examples" of such occupations included "assembler" (DOT § 706.684-022), "sorter" (DOT § 753.587-010), and "marker" (DOT § 920.687-126). Id. at 72. However, a person with plaintiff's ailments as she had testified to them at the hearing would not be able to perform either plaintiff's past work or other work. Id. at 73. The DOT lists the expected noise level for both the assembler and marker positions as "Level 4 - Loud." DOT §§ 706.684-022, 920.687-126.

On October 17, 2012, the ALJ issued a written decision finding plaintiff was not disabled. Dkt. # 13-2, at 27. The ALJ found that plaintiff had not engaged in substantial gainful activity since the application date, that she had severe impairments affecting her ability to work, and that her impairments were not equivalent to one of those listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. Id. at 18. The ALJ next formulated plaintiff's residual functional capacity (RFC), taking into account the medical evidence and testimony. Id. at 20. He found that plaintiff could perform "light work" as defined by 20 C.F.R. 416.967(b), with certain restrictions. Id. Among the restrictions in plaintiff's RFC was the determination that she "should avoid loud background noises, but [sic] should not require binaural hearing." Id. Based on the RFC and the record, the ALJ determined that plaintiff could perform her past work as a pillow stuffer as that job is normally performed, although

---

[2] Neither the VE nor the ALJ identified the specific DOT section to which the VE was referring.

not as plaintiff had performed it. Id. at 25. He also found that plaintiff could perform other occupations present in the economy, specifically listing the assembler, sorter, and marker positions previously identified by the VE. Id. at 26. He concluded by stating that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the economy." Id. at 26-27.

On July 31, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Dkt. # 13-2. Plaintiff thereafter sought judicial review, arguing that the ALJ committed several errors, including: his credibility determination; his finding that plaintiff's knee impairment was not medically determinable; his RFC formulation; and his determination that plaintiff could perform both her past work and other work available in the economy. Dkt. # 16. The Court referred the case to the magistrate judge, who entered a report and recommendation recommending the Court affirm the ALJ's decision. Dkt. # 21, at 11. Plaintiff has objected to the report and recommendation solely as to the ALJ's determination of her ability to perform her past work and other available work.[3] Dkt. # 22.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the

---

[3] Plaintiff's objection is silent as to the other issues addressed in the report and recommendation. Accordingly, the Court will not discuss those issues further. See 28 U.S.C. § 636(b)(1).

4

report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

### III.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided the case at step four of the analysis, but he made alternate findings at step five. Dkt. # 13-2, at 25-27. At both steps, the ALJ determined that plaintiff's claim for benefits should be denied. Id. The magistrate judge recommendated that the ALJ's decision be upheld. Dkt. # 21, at 8-11. In her objection, plaintiff contends that the ALJ did not follow the proper procedures at step four and that the VE's testimony was so unreliable as to undermine the ALJ's findings at step five. Dkt. # 22, at 1-4.

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

5

adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

A. The ALJ's Findings at Step Four

At step four, the ALJ must determine "whether a claimant's impairments prevent her from performing her past relevant work." Wall, 561 F.3d at 1052 (citing Allen, 357 F.3d at 1142). "A claimant capable of performing past relevant work is not disabled within the meaning of the Social Security Act." Andrade v. Sec'y of Health & Human Servs., 985 F.2d 1045, 1050 (10th Cir. 1993) (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). Step four has three separate phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (internal citations omitted). While the claimant bears the "ultimate burden of proving that she is disabled," at step four the ALJ has a duty "of inquiry and factual development." Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993) (citing Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984)). The ALJ found at step four that plaintiff could perform her past work as a pillow stuffer as that occupation is generally performed. Dkt. # 13-2, at 25. Plaintiff argues that the ALJ made two related errors in

the second phase of step four:[4] he considered plaintiff's former employment as a pillow stuffer to be past relevant work; and he failed to make the required specific findings of the physical and mental demands of plaintiff's past relevant work. Dkt. # 22, at 2-3. These errors, plaintiff argues, led to an incorrect finding in the third phase of step four. Id. at 3-4.

Previous employment is "past relevant work" when "it was done within the last 15 years, lasted long enough for the person to learn to do it and was substantial gainful activity." SSR 82-61, 1982 WL 31387 (Jan. 1, 1982). Plaintiff does not contest that she held the position as pillow stuffer within the last fifteen years or that she did not learn the position, arguing instead that it was not substantial gainful activity. See Dkt. # 22, at 3. Substantial gainful activity is employment for which the individual earned wages equal to or exceeding an amount provided by regulation. 20 C.F.R. § 404.1574(b)(2) (2006). The record shows that plaintiff was a pillow stuffer only in the year 2000, and in that year she worked as both a pillow stuffer and a cook's helper. Dkt. # 13-6, at 27. The regulations state that, for the year 2000, earnings greater than $700 per month show that employment was substantial gainful activity. 20 C.F.R. § 404.1574(b)(2); see also id. Table 1. In that year, plaintiff earned a total of $14,464.38, or an average of $1,205.36 per month. Dkt. # 13-5, at 9. However, the record is unclear as to what amount of money plaintiff earned from her position as a pillow stuffer; the record states only the yearly total earnings, without specifying the source of those earnings. See id. In her work history report, plaintiff listed her hourly compensation and hours worked per week as a pillow stuffer, but she did not state how many weeks she held the position. Dkt. # 13-6, at 30. It is not possible, based on the evidence in the record, to determine whether plaintiff earned $700 or more per month as a pillow stuffer. Thus, the ALJ's determination that

---

[4]  Plaintiff makes no argument regarding the first phase of step four.

plaintiff's position as a pillow stuffer was past relevant work, which necessarily entails a determination that the position was substantial gainful activity, is not supported by substantial evidence in the record.

As the ALJ's findings at phase three of step four were based on his determination that plaintiff's occupation as a pillow stuffer was past relevant work, those findings are not based on substantial evidence. Therefore, the ALJ's finding of non-disability at step four was in error.[5] However, the ALJ made alternate findings at step five of the analysis, and if his step five findings are not in error then any error at step four is harmless. See Pauley v. Chater, 64 F.3d 670, at *1 (10th Cir. 1995) (unpublished).[6]

B. The ALJ's Alternate Findings at Step Five

Plaintiff argues that the ALJ erred at step five of the analysis, stating that the ALJ could not rely on the VE's testimony and that, without the VE's testimony, the ALJ's finding of sufficient other work in the national economy lacks substantial evidence. Dkt. # 22, at 1-2. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists in the economy that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work beyond her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual

---

[5] As the Court finds error in the ALJ's determination of plaintiff's past relevant work, the Court does not reach plaintiff's second argument, that the ALJ did not make specific findings about the physical and mental demands of her past relevant work. Dkt. # 22, at 3-4.

[6] This and all other unpublished decisions are not precedential; they are cited for their persuasive value only. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because it rests on the VE's testimony, which plaintiff argues is wholly unreliable because it conflicts with the DOT. The Tenth Circuit has stated that, when there is a conflict between the DOT and the testimony of a VE, the ALJ "must investigate and elicit a reasonable explanation for any conflict . . . before the ALJ may rely on the expert's testimony." Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); see also SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Failure to resolve the conflict is reversible error, unless the error is harmless. Poppa v. Astrue, 569 F.3d 1167, 1173-74 (10th Cir. 2009); see also Krueger v. Astrue, 337 F. App'x 758, 761-62 (10th Cir. 2009). There is an apparent conflict here. The ALJ's hypothetical question stated that "[t]he person should avoid loud background noises and should not work in environments or [sic] require good bi-aural hearing." Dkt. # 13-2, at 70-71. This limitation is included in plaintiff's RFC. Dkt. # 13-2, at 20. The VE identified three jobs that the hypothetical person could do, including "assembler" (DOT § 706.684-022), "sorter" (DOT § 753.587-010), and "marker" (DOT § 920.687-126). Id. at 72. The DOT lists the expected noise level for both the assembler and marker positions as "Level 4 - Loud." DOT §§ 706.684-022, 920.687-126. Although the ALJ did ask the VE to explain any difference between her testimony and the information in the DOT prior to posing the hypothetical question, see Dkt. # 13-2,

9

at 70, the VE failed to identify the conflict, and the ALJ did not undertake further inquiry.[7] Thus, the ALJ could not rely on the VE's testimony as to the assembler and marker positions. See Haddock, 196 F.3d at 1092.

However, there is no conflict between the VE's testimony and the DOT as to the sorter position,[8] and thus there is no error in the ALJ's reliance on the VE's testimony as to that position. Plaintiff states that "the assumption that there is one remaining job available to Plaintiff is unsupported by the fact the VE's testimony is unreliable and inconsistent with the DOT." Dkt. # 22, at 1. In essence, plaintiff argues that the ALJ could not rely on the VE's testimony as to the sorter position because of the conflicting testimony about the assembler and marker positions. However, plaintiff cites no authority supporting this argument, and the Court could find none. In similar situations, the Tenth Circuit has often continued its analysis beyond the determination of a conflict to consider whether the portion of the VE's testimony about which there is no conflict would support the ALJ's ruling, implicitly rejecting plaintiff's argument. See, e.g., Conger v. Astrue, 453 F. App'x 821, 827-28 (10th Cir. 2011); Krueger v. Astrue, 337 F. App'x 758, 762 (10th Cir. 2009); Rogers v. Astrue, 312 F. App'x 138, 141-42 (10th Cir. 2009); Norris v. Barnhart, 197 F. App'x 771, 776-77 (10th Cir. 2006). If "a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet" exists in the national economy for those occupations about

---

[7] In his decision, the ALJ stated that "[p]ursuant to SSR 00-4p, [he has] determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Dkt. # 13-2, at 26. However, given the obvious conflict regarding noise level, this statement does not demonstrate the level of investigation and explanation required by Haddock.

[8] The expected noise level for the sorter position is "Level 3 - Moderate." DOT § 753.587-010.

which there is no conflict between the VE's testimony and the DOT, the Tenth Circuit has upheld the ALJ's finding of no disability. Conger, 453 F. App'x at 828 (quoting Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995)). When there is a conflict as to all of the positions identified by the VE, however, the Tenth Circuit has remanded the case to the ALJ for resolution of the conflict. See, e.g., Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005).

As there is no conflict regarding the sorter position, the Court will consider whether the ALJ's decision at step five could be supported based on the VE's testimony about that position. The Tenth Circuit's previous decisions in Conger, Krueger, Rogers, and Norris, although not precedential, are instructive. In Conger, there was a conflict as to two of the five positions identified by the VE. Conger, 453 F. App'x at 827. The Tenth Circuit, noting that the VE "explicitly stated that other occupations would be available . . . and that she was simply providing occupational examples," found that the remaining positions existed in sufficient numbers for the ALJ to find the claimant not disabled at step five. Id. at 828. Similarly, although three of the four occupations identified by the VE in Rogers conflicted with the DOT, the Tenth Circuit found that the fourth occupation provided a sufficient basis for the ALJ's ruling. Rogers, 312 F. App'x at 141-42. By contrast, the Tenth Circuit panel in Krueger ordered the case remanded to the ALJ for confirmation that there were no actual conflicts between the DOT and the four occupations that had no apparent conflict with the DOT. Krueger, 337 F. App'x at 762. The court stated that the ALJ should, in addition to confirming that no conflicts existed, ensure that the claimant's limited mathematical skills would not preclude her from performing any of the occupations for which no conflict existed. Id. In Norris, the Tenth Circuit found that the two occupations identified by the VE that did not conflict with the DOT existed in such low numbers in the region that the ALJ should determine whether they met the

11

requirement for a "significant number" of positions. Norris, 197 F. App'x at 777 (citing 42 U.S.C. § 423(d)(2)(A)). The court was also concerned that the ALJ's failure to properly address one of the medical opinions in the record could affect the claimant's RFC, which in turn could make one or both of the identified occupations no longer applicable. Id.

Plaintiff's claim is similar to both Rogers and Norris. As in Rogers, only one of the proposed occupations, the sorter position, does not conflict with the DOT.[9] See Rogers, 312 F. App'x at 141. Plaintiff does not contest that a person with her "age, education, work experience, and residual functional capacity" could work as a sorter. Dkt. # 13-2, at 26. This is unlike both Krueger and Norris, where the Tenth Circuit returned the case to the ALJ at least in part because of a concern that some other aspect of the case--the claimant's mathematical skills in Krueger and the unaddressed medical opinion in Norris--could affect whether the remaining occupations were feasible. See Krueger, 337 F. App'x at 762; Norris, 197 F. App'x at 777. That concern does not exist here, and the ALJ need find only one occupation exists in sufficient numbers to satisfy his burden at step five. See Evans, 55 F.3d at 532 ("Work exists in the national economy [for step-five purposes] when there is a significant number of jobs (in one or more occupations) having requirements which the claimant is able to meet . . . ." (emphasis added) (citing 20 C.F.R. § 404.1566(b))); see also Rogers, 312 F. App'x at 141-42. However, as in Norris, it is not clear that a "significant number" of sorter positions are available. See Norris, 197 F. App'x at 777. Thus, the Court must consider whether plaintiff's

---

[9] Like the VE in Conger, the VE here stated that the occupations fitting the ALJ's hypothetical were merely "representative examples" of work that plaintiff could do. Dkt. # 13-2, at 72. As discussed above, the VE testified that plaintiff could also resume her past work as a pillow stuffer as that job is generally performed. Id. at 71. However, the VE did not identify the DOT section corresponding to that occupation, and she provided no testimony as to the number of positions available in the economy. Likewise, the ALJ made no findings as to the number of positions. Thus, evidence exists only for the sorter position.

case should be remanded to the ALJ to determine if the sorter position exists in "significant number[s]" in the regional or national economy. See 20 C.F.R. § 404.1566(b).

Plaintiff argues that such a remand is necessary because the ALJ did not find that each position the VE identified existed in significant numbers. Dkt. # 22, at 2. Instead, the ALJ listed all three occupations and then stated that plaintiff could "mak[e] a successful adjustment to other work that exists in significant numbers." Dkt. # 13-2, at 26-27. The Tenth Circuit has emphasized that "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation" and, as such, "the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" Allen v. Barnhart, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992)). However, the court in Allen also stated that "it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance . . . . Such an approach might have been open to us here had the number of available jobs identified by the VE not been one hundred but considerably greater." Id. at 1145. This case does not fit neatly within the Tenth Circuit's prior decisions on this issue. For example, in Rogers, where only one of the four originally proposed occupations had no conflict, the Tenth Circuit panel found that 11,000 positions in the national economy met the requirement for a "significant number" of jobs. Rogers, 312 F. App'x at 141-42. In Norris, however, the Tenth Circuit found that the two occupations without a conflict, which together totaled approximately 1,500 jobs in the regional economy and 200,000 jobs in the national economy, were not clearly present in "significant number[s]." Norris, 197 F. App'x at 777. In Stokes v. Astrue, 274 F. App'x 675 (10th Cir. 2008), the Tenth Circuit decided that the two jobs for which there was no conflict, together totaling 11,000

13

jobs regionally and 152,000 jobs nationally, existed in significant numbers, satisfying the step five analysis. Id. at 684. Here, the VE testified that there are 7,000 sorter positions in the regional economy and 80,000 positions nationally. Dkt. # 13-2, at 72. There are more regional positions available than were present in Norris, but not as many as in Stokes. There are more national positions available than in Rogers, but there are significantly fewer than were present in Stokes and Norris. Given the Tenth Circuit's stated preference that a reviewing court should make a dispositive finding only in an "exceptional circumstance," the Court declines to find that there are a "significant number" of sorter positions in the economy. Thus, the ALJ's alternate step five determination that plaintiff is not disabled is in error, as there is not a finding that there is a "significant number" of other work that plaintiff is able to do.

In summary, the Court finds that the ALJ's finding at step four of no disability is not supported by substantial evidence in the record. Further, the ALJ's analysis at step five is incomplete and, for that reason, the ALJ's finding at step five is in error. On remand, the ALJ should determine whether plaintiff's previous employment as a pillow stuffer meets the requirements for "substantial gainful activity," and make all necessary findings as to the physical and mental demands of that position. Additionally or alternately, the ALJ should determine, based on the specific facts of plaintiff's case, whether a "significant number" of sorter positions are available. The ALJ may also elicit a reasonable explanation for the conflicts between the VE's testimony and the DOT as to the assembler and marker positions.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 21) is **rejected**, and the Commissioner's decision is **reversed and remanded** for further proceedings. A separate judgment is entered herewith.

**DATED** this 5th day of January, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE